IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

WILLIAM A. BLAND,
Plaintiff,

vs. Case No.: 5:12cv223/RS/EMT

DR. E. LOUIS,
Defendant.
_______________________________/

**REPORT AND RECOMMENDATION**

This prisoner civil rights case is before the court upon Defendant's Motion to Dismiss for Failure to Exhaust Administrative Remedies (doc. 35). Plaintiff responded in opposition to the motion (doc. 49).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After careful consideration, the undersigned concludes that Defendant's motion should be granted and this case dismissed.

I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff William Bland, an inmate of the Florida Department of Corrections ("FDOC") proceeding pro se, commenced this action on or about July 13, 2012, by filing a civil rights complaint under 42 U.S.C. § 1983 (doc. 1). Now pending is Inmate Bland's Second Amended Complaint (doc. 14). Inmate Bland sues Dr. Emlyn Louis, who was employed with the FDOC as the Chief Health Officer at Jackson Correctional Institution ("Jackson C.I."), claiming Dr. Louis was deliberately indifferent to his medical needs concerning his pain management, in violation of the Eighth Amendment, from February 28, 2012 to July 13, 2012 (*see* doc. 14 at 4–6). Inmate Bland seeks "general" and punitive damages, a declaratory judgment, and an injunction requiring the prescription of 100 mg of tramadol (also known as Ultram) for his medical condition (*id.* at 7).

Dr. Louis was served with process on October 19, 2012 (doc. 20). On January 24, 2013, he filed a motion to dismiss without prejudice under 42 U.S.C. § 1997(e)(a), arguing that Inmate Bland failed to properly exhaust his administrative remedies before filing this lawsuit (doc. 35). Dr. Louis submitted affidavits and documentation in support of his exhaustion argument (*id.*). The court provided Inmate Bland an opportunity to develop the factual record regarding the exhaustion issue (*see* doc. 36). Inmate Bland responded in opposition to Dr. Louis's motion, and submitted supporting documentation (doc. 49).

II. LEGAL STANDARDS

Title 42 U.S.C. § 1997e provides, in relevant part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of all available administrative remedies is a mandatory pre-condition to suit. *See* Booth v. Churner, 532 U.S. 731, 739, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001); *see also* Porter v. Nussle, 534 U.S. 516, 524–25, 122 S. Ct. 983, 988, 152 L. Ed. 2d 12 (2002) ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."); Parzyck v. Prison Health Serv., Inc., 627 F.3d 1215, 1217 (11th Cir. 2010). The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *See* Porter, 534 U.S. at 524. Exhaustion is required whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both. *See* Booth, *supra* at 734. The requirement is not subject to waiver by a court, or futility or inadequacy exceptions. *Id.* at 741 n.6; McCarthy v. Madigan, 503 U.S. 140, 112 S. Ct. 1081, 117 L. Ed. 2d 291 (1992) ("Where Congress specifically mandates, exhaustion is required."); Alexander v. Hawk, 159 F.3d 1321 (11th Cir. 1998).

The law of the Eleventh Circuit is clear that the PLRA's exhaustion requirement requires proper exhaustion through the administrative grievance procedure created by the agency (the Florida DOC), including compliance with the agency's deadlines and other critical procedural rules. *See* Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005) (holding that § 1997e(a)'s exhaustion

requirement contains "a procedural default component"—that is, prisoners must timely meet the deadlines or the good cause standard of administrative grievance procedures before filing a federal claim, and stating that without "the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining access to a federal forum without exhausting administrative remedies"); Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000) (holding that "when a state provides a grievance procedure for its prisoners, . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit"); Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999) (per curiam) (holding that a prisoner did not exhaust available administrative remedies where he filed an untimely grievance without seeking leave, and failed to appeal the denial of his grievance); *accord* Woodford, 548 U.S. at 94 ("Requiring proper exhaustion . . . gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors. This is particularly important in relation to state corrections systems because it is "difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons."); Woodford, 548 U.S. at 90–91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings).

The grievance procedures promulgated by the Florida DOC require an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Office of the Secretary ("Central Office"). *See* Fla. Admin. Code rr. 33-103.005 to 33-103.007; *see also* Parzyck, 627 F.3d at 1218. If an inmate is filing a medical grievance, he may bypass use of an initial informal grievance and begin his medical complaint with a formal grievance, submitted on Form DC1-303, at the institutional level. *See* Fla. Admin. Code rr. 33-103.006(1), (3)(e), 33-103.008, 33-103.019. If the inmate is dissatisfied with the result of the medical formal grievance (for example, if it is denied), the inmate is authorized to appeal to the Central Office. *Id.* at r. 33-103.007(1), 33-103.008(2). If an inmate is filing an emergency grievance, he may bypass use of informal and formal grievances and begin his complaint

with a direct grievance to the Central Office. *Id.* at r. 33-103.007(6)(a). If an inmate files a direct grievance with the Central Office, he must clearly state the reason for not initially bringing the complaint to the attention of institutional staff and bypassing the formal grievance step of the institution. *Id.* Upon receipt of the direct grievance by the Central Office and following review of the grievance, if it is determined that the grievance is not an emergency grievance, the grievance must be returned to the inmate with the reasons for return specified and an advisement that the inmate resubmit his grievance at the appropriate level. *Id.*

The FDOC's grievance procedures also establish time frames for inmates to file grievances. In the case of a grievance of a medical nature, the formal grievance must be received no later than fifteen (15) calendar days from the date on which the incident or action being grieved occurred. *See* Fla. Admin. Code rr. 33-103.011(1)(b). Direct grievances to the Central Office must also be received within fifteen (15) calendar days from the date on which the incident or action being grieved occurred. *See* Fla. Admin. Code rr. 33-103.011(1)(d). The grievance procedure provides for an extension of the time frames as follows:

> (2) An extension of the above-stated time periods shall be granted when it is clearly demonstrated by the inmate to the satisfaction of the reviewing authority . . . or the Secretary that it was not feasible to file the grievance within the relevant time periods and that the inmate made a good faith effort to file in a timely manner. The granting of such an extension shall apply to the filing of an original grievance or when re-filing a grievance after correcting one or more deficiencies cited in Rule 33-103.014, F.A.C.

Fla. Admin. Code rr. 33-103.011(2). The deficiencies cited in Rule 33-103.014 include:

> (f) The inmate did not provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable. This evaluation is made on a case by case basis and the reasons for rejecting the complaint will vary with the facts alleged in the complaint.
>
> (g) The grievance did not have the attachments required: informal grievance and response, except as allowed for in paragraphs 33-103.006(3)(a) through (h), F.A.C., or the formal grievance and response, except as provided for in subsection 33-103.007(6), F.A.C.;
>
> . . . .
>
> (n) A decision has already been rendered to an inmate by a particular office on the issue currently being grieved before it.

Fla. Admin. Code rr. 33-103.014(1). An inmate who has a grievance returned to him for reasons stated in subsections (f), (g), or (n) may refile utilizing the proper procedure or correct the stated deficiency and refile if upon receipt of the notification the filing is within allowable time frames. *Id.* r. 33-103.014(2). When a grievance is returned to an inmate for being improperly filed, the inmate shall be told why the grievance was returned and told that in order for him to receive administrative review of his complaint he must correct the defects and resubmit the grievance within the time frames set forth in r. 33-103.011, unless instructed otherwise in the grievance response. *Id.*

In Bryant v. Rich, 530 F.3d 1368 (11th Cir. 2008), the Eleventh Circuit outlined the procedure district courts should follow when presented with a motion to dismiss for failure to exhaust. The court held that the defense of failure to exhaust should be treated as a matter in abatement and not an adjudication on the merits. *Id*. at 1374–75. "This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008) (quoting Bryant, 530 F.3d at 1374). Because exhaustion is a matter in abatement, "it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." Bryant, 530 F.3d at 1374–75 (citation and internal quotation omitted). Where exhaustion is treated as a matter in abatement and not an adjudication in the merits, it is proper for the district court to consider facts outside of the pleadings and resolve factual disputes so long as the factual disputes do not decide the merits, and the parties have sufficient opportunity to develop a record. *Id.* at 1376.

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps. Turner, 541 F.3d at 1082. First, the court looks to the factual allegations in Defendant's motion, and those in Plaintiff's response, if any. *Id*. If they conflict, the court accepts Plaintiff's version as true. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.*; *see also* Bryant, 530 F.3d at 1373–74. If the complaint is not subject to dismissal at the first step, "the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082 (citing Bryant, 530 F.3d at 1373–74, 1376). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id*. Upon making findings on

the disputed issues of fact, the court then decides whether, under those findings, the plaintiff has exhausted his available administrative remedies.[1]

III. ANALYSIS

There is no dispute that Dr. Louis's conduct underlying this § 1983 action occurred from February 28, 2012, the date Dr. Louis discontinued Inmate Bland's prescription for tramadol, to July 13, 2012, the date Bland commenced this civil rights action (*see* docs. 1, 14). There is also no dispute that during the relevant time period, Inmate Bland filed several inmate requests, informal grievances, and formal grievances. The crux of Dr. Louis's motion to dismiss is that Inmate Bland failed to satisfy the final step of the FDOC's administrative grievance procedure, because he failed to properly present his complaint regarding Dr. Louis's discontinuance of tramadol to the Central Office (*see* doc. 35 at 5–9, 12–17). From Inmate Bland's response, he appears to make four arguments in opposition to the motion to dismiss: (1) an appeal to the Central Office was futile; (2) the warden advised him that review beyond the institutional level was unavailable; (3) he effectively appealed to the Central Office by sending a letter to the Central Office; and (4) he appealed to the Central Office by filing a direct grievance and a grievance appeal (doc. 49). The court will address each of these issues in turn.

A. Futility of Appeal to Central Office

The court is unconvinced by Inmate Bland's argument that the Central Office could not provide the relief he requested (a prescription for tramadol), because that relief could only be provided by medical authorities (doc. 49 at 2). The FDOC's administrative grievance process for grievances of a medical nature expressly provides an opportunity for a Central Office remedy, and requires inmates to appeal the denial of grievances related to medical issues to the Central Office. *See* Fla. Admin. Code rr. 33-103.008(2), 33-103.007(1), (5). Even though a favorable administrative remedy outcome may be unlikely, that is not sufficient reason for waiving Plaintiff's compliance with the FDOC's administrative grievance procedure.

B. Unavailability of Appeal to Central Office

[1] Although the court previously advised the parties that Dr. Louis's motion to dismiss would be converted to one for summary judgment, the court declines to do so in light of the procedures set forth in Bryant and Turner, *supra*. The court thus proceeds to treat Dr. Louis's motion as a motion to dismiss, but in doing so the court will—as it is permitted to do—consider facts outside the pleadings. *See* Bryant, 530 F.3d at 1374–75; *see also, e.g.*, Tilus v. Kelly, No. 12-12216, 2013 WL 692703 (11th Cir. Feb. 26, 2013).

Additionally, the court is unpersuaded by Inmate Bland's argument that he was not required to file an appeal with the Central Office, because Warden Bryant told him, in memoranda dated July 2, 2012 and July 19, 2012, that Dr. Louis was the "final and last option in seeking a remedy" (in Inmate Bland's words) (doc. 49 at 2–3; doc. 49-1 at 3, 4).[2]

Warden Bryant's memorandum to Inmate Bland dated July 2, 2012 stated:

> Medical information of inmates is confidential by state and federal law such that unauthorized use or disclosure would be in violation of state and federal law. I am not authorized to have health information pertaining to inmates. However, I contacted Mrs. Linda Cain, Health Services Administrator regarding your concerns and she informed me that you had also contacted the medical department regarding your concerns. She explained to me that Dr. Louis, Chief Health Officer, has completed a review of your medical condition and he continues to review and monitor your medical condition.
>
> Dr. Louis is the designated health authority with which **final** clinical judgment rests on medical issues concerning inmates assigned to Jackson Correctional Institution and assigned work camps.
>
> If you feel you are not receiving appropriate medical treatment I recommend that you file an administrative appeal pursuant to the rules of the Department of Corrections, Chapter 33-103, Inmate Grievance Procedure. If you have a medical emergency you may report it to any staff member for immediate assistance.

(doc. 49-1 at 3) (emphasis in original).

Warden Bryant's memorandum to Inmate Bland dated July 19, 2012 stated:

> I want to make sure that I understand your situation in that you stated in your letter that this started with Dr. Louis on February 28th. I interpret this as you feel that Dr. Louis is the individual that is preventing you in receiving specific treatment that you are requesting. You also reflect in your letter that you have exhausted all your state remedies to try to correct your concerns. Exhausting you [sic] remedies would require the review and consideration of the supervisor's [sic] of Dr. Louis. Therefore, medical experts that supervise Dr. Louis agree with his decision because they have not instructed anyone to modify your current treatment plan.
>
> Please understand that I am not making a determination if your current treatment is appropriate or not. I am only reviewing your case in an attempt to ensure that you have

[2] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

> been provided an opportunity for medical staff outside of this facility to have reviewed your concerns.
>
> Do not hesitate to contact me against if Regional or Central Office medical staff have not reviewed your case.

(doc. 49-1 at 4). Neither of these memoranda from the warden advised Inmate Bland that he was not required to file an appeal with the Central Office, or that review by the Central Office was unavailable. Therefore, Inmate Bland's unavailability argument is unavailing.

C. Letter to Central Office

Inmate Bland argues he satisfied the final step of the grievance process by sending a letter to the Chief Medical Administrator of Region I in Tallahassee, Florida, complaining that he had not received a response to an inmate request he had sent to Dr. Louis (doc. 49-1 at 31–32). Bland's letter was dated March 12, 2012, and stamped received in the "Department of Corrections Inmate Grievances" office on March 30, 2012 (*id.* at 31). It was not logged as a grievance appeal to the Central Office (*see* doc. 35-12, Affidavit of Rebecca Padgham ¶ 3; doc. 35-13), and there is no indication Bland received a response to the letter.

Inmate Bland's March 12 letter was not a proper direct grievance or grievance appeal to the Central Office for several reasons. First, it was not submitted on Form DC1-303, the form required for direct grievances and grievance appeals to the Central Office. *See* Fla. Admin. Code r. 33-103.007(1), (6)(a). Second, Bland did not state in the letter that it concerned an emergency or was in the nature of any other type of grievance properly filed as a direct grievance to the Central Office.[3]

Third, the grievance procedure does not authorize an inmate to skip to the Central Office level when he is unsatisfied with a response to an inmate request; rather, the inmate must file an informal grievance or, in the case of medical issues, a formal grievance, and then proceed up the ladder to the Central Office level. In this case, Inmate Bland's inmate request to Dr. Louis did not qualify as an informal grievance, because Bland did not check the box on the inmate request form indicating he was using it as an informal grievance as opposed to simply an inmate request (*see* doc. 49-1 at 17). His

---

[3] At the time Inmate Bland sent the letter, March 12, 2012, the grievance procedure permitted four types of direct grievances to the Central Office: (1) emergency grievances, (2) grievances of reprisal, (3) grievances of a sensitive nature, and (4) grievances alleging a violation of HIPPA. *See* Fla. Admin. Code r. 33-103.007(6). That rule was amended June 13, 2012, to remove grievances of a sensitive nature.

failure to check the box indicating it was an informal grievance caused the inmate request to be handled routinely and not considered an informal grievance (doc. 35-1, Affidavit of Linda Cain ¶ 3, 4). *See* Fla. Admin. Code r. 33-103.005(2)(b).[4] Bland's inmate request was also not a properly filed formal grievance, because it was not submitted on Form DC1-303—the form required for formal grievances—and instead was submitted on Form DC6-236, the form required for inmate requests and informal grievances. *See* Fla. Admin. Code rr. 33-103.006(1), 33-103.005(2).

Fourth, even if Inmate Bland's inmate request to Dr. Louis qualified as a grievance appeal, which it did not, the grievance procedure did not authorize Bland to proceed to the Central Office level on March 12, 2012, the date Bland sent his letter to the Chief Medical Administrator (doc. 49-1 at 17–18). The grievance procedure permits an inmate to proceed to the next step of the grievance process when the time limit for a response from the responding authority has expired. *See* Fla. Admin. Code rr. 33-103.011(4). The response time for inmate requests and informal grievances is ten (10) days, and the response time for formal grievances is twenty (20) days. *See* Fla. Admin. Code rr. 33-103.005(4), 33-103.011(3). Inmate Bland sent his letter to the Chief Medical Administrator on "3-12-12," the same day he submitted his inmate request to Dr. Louis (doc. 49-1 at 17, 31). Indeed, Bland indicated on the bottom of the inmate request, "cc: Tallahassee, Medical Supervisor, Region (I), Secretary's Office" (*id.* at 18). Because the response time for the inmate request had not expired, Bland could not properly proceed to the Central Office level.

For the aforementioned reasons, Inmate Bland's March 12, 2012 letter to the Chief Medical Administrator of Region I was not a proper direct grievance or grievance appeal to the Central Office.

D. <u>Grievances</u>

The final issue for determination is whether Inmate Bland properly presented the issue to the Central Office through any direct grievances or grievance appeals.

1. <u>Direct Grievance to Central Office, log number 12-6-10077</u>

The documents submitted by the parties show that on March 15, 2012, Inmate Bland filed a direct grievance to the Central Office, log number 12-6-10067 (doc. 35-12, Padgham Aff. ¶ 3; doc. 35-14; doc. 49-1 at 21). In the direct grievance, Plaintiff stated the grievance concerned a medical

---

[4] Linda Cain, the senior health services administrator, responded to Bland's inmate request on behalf of Dr. Louis, stating she would refer his chart to Dr. Louis (doc. 49-1 at 17–18).

issue, specifically, Dr. Louis's discontinuing his prescribed pain medication (doc. 49-1 at 21). Bland stated he had filed an informal grievance which had not been answered, and a formal grievance which also was not answered (*id.*). Bland requested that his prescription be reinstated and that he be referred to a specialist (*id.*). On or about April 2, 2012, the Central Office returned the grievance without action for the following reasons:

> Your request for Administrative Remedy or Appeal has not been filed in compliance with Chapter 33-103.006, Inmate Grievance Procedure. You did not provide this office with a copy of the formal grievance filed at the institutional level as required by rule or the reason you provided for by-passing that level of the grievance procedure is not acceptable.
>
> Upon receipt of this response, if you are within the allowable time frames for processing a grievance, you may resubmit your grievance at your current location in compliance with Chapter 33-103, Inmate Grievance Procedure.

(doc. 49-1 at 22).[5]

This grievance demonstrates that Inmate Bland knew, upon receiving and the Central Office's response to grievance log numbers 12-6-10067, that to properly grieve the issue of Dr. Louis's discontinuance of tramadol, he must provide the Central Office with a copy of the formal grievance he filed at the institutional level. There is no evidence Bland ever did so. Therefore, he did not properly present the issue to the Central Office in grievance log number 12-6-10067.

2. Formal Grievance, log number 1203-104-062

Inmate Bland argues he exhausted his remedies by submitting a direct "emergency" grievance to the Central Office on March 26, 2012, log number 1203-104-062. He states the Regional Executive Director or Regional Health Services responded to the grievance on March 30, 2012 (doc. 49 at 2, 4–5; doc. 49-1 at 23; doc. 35-9). However, the grievance itself shows that Bland stated on the form that he was filing the "emergency" grievance at the institutional level, not the Central Office (doc. 35-9). Emergency grievances may be filed as formal grievances at the institutional level, pursuant to Fla. Admin. Code r. 33-103.006(3)(a). Bland was aware of this, as evidenced by the fact that earlier that month, he filed an "emergency" grievance at the institutional level (log number 1203-104-022),

[5] Inmate Bland filed other grievances with the Central Office, including log numbers 12-6-10456 and 12-6-18859; however, neither of those grievances concerned his pain medication (doc. 35-13; doc. 35-15; doc. 49-1 at 26).

labeled it the same way as the March 26 grievance, and cited the rule authorizing the filing of "emergency" formal grievances at the institutional level, rule 33-103-006 (*see* doc. 35-7). The fact that the Regional Executive Director responded to the grievance does not suggest it was a direct grievance to the Central Office. The administrative rules in effect at the time Bland filed the grievance, stated:

> **33-103-008 Grievances of Medical Nature.**
> (1)(a) If a formal grievance of a medical nature is filed at the institutional level, it shall be forwarded to the institution's chief health officer for investigation and response. Following preparation of a response and signature of the responding employee, the grievance shall be returned to the warden or assistant warden or deputy warden to ensure appropriate filing and routing. . . . In the absence of the chief health officer, the review and initialing of the grievance will be made by the Director of Regional Health Care or the acting chief health officer who is designated in writing by the Director of Regional Health Care.

Fla. Admin. Code rr. 33-103.008(1)(a) (effective 3-25-08 to 5-27-12) (emphasis added). Therefore, the fact that the Regional Executive Director reviewed and signed the formal grievance did not transform it into a direct grievance to the Central Office.

Moreover, the Regional Executive Director's response demonstrates it was not deemed a proper direct grievance to the Central Office or a proper appeal seeking Central Office review of a denied formal grievance. The response stated:

> Your Request for Administrative Remedy or Appeal is being returned without disposition for the following reasons:
>
> NOTE: The subject of your grievance has been previously asked and answered by way of inmate grievance log #1203104-052, dated March 21, 2012 [a formal grievance]. Your complaint was investigated, a decision was rendered, and the response was forwarded to you. You were also advised of how to seek further review. You are advised that the filing of duplicate grievances only impedes the grievance process; it does not change a response nor hasten a reply.
>
> Your request for administrative appeal is returned without action.
>
> You may re-file if upon receipt of this notification the filing is with the time frames allowable and is in accordance with Department of Corrections Rules Chapter 33-103, F.A.C.

> In order to receive administrative review of your complaint, you must correct the stated defect(s) and re-submit the grievance within the time frames set forth in Department of Corrections Rules Chapter 33-103.011, F.A.C.

(doc. 49-1 at 23) (emphasis added). Bland was thus advised that grievance log number 1203-104-062 was not a proper appeal seeking Central Office review of a denied formal grievance. Therefore, this grievance did not satisfy the final step of the administrative review process for exhaustion purposes.

IV. CONCLUSION

Based upon the undisputed facts, and viewing the disputed facts in the light most favorable to Inmate Bland, the undersigned concludes Dr. Louis has satisfied his burden of proving Inmate Bland failed to properly exhaust available administrative remedies prior to filing his federal lawsuit. Specifically, Bland did not properly appeal the denial of a formal grievance to the Central Office, nor did he properly file a grievance that qualified as a direct emergency grievance with the Central Office. Therefore, Dr. Louis's motion to dismiss should be granted, and this action dismissed without prejudice, pursuant to 42 U.S.C. 1997e(a).

Accordingly, it is respectfully **RECOMMENDED**:

1. That Defendant's motion to dismiss (doc. 35) be **GRANTED**.

2. That this case be **DISMISSED without prejudice** for Plaintiff's failure to exhaust available administrative remedies.

3. That the clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida this 9th day of April 2013.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**